John Harper III, Dunkley & Bennett, Minneapolis, Minn., for plaintiff.

Craig D. Diviney, Paul Hayward, Dorsey & Whitney, Minneapolis, Minn., for defendant.

**DISTRONICS CORPORATION, Plaintiff,**

v.

**ROBERTS–HAMILTON COMPANY, Defendant.**

Civ. No. 3–82–1022.

United States District Court, D. Minnesota, Third Division.

Dec. 8, 1983.

## MEMORANDUM AND ORDER

DEVITT, District Judge.

In this diversity action for breach of contract, plaintiff data processing service company claims defendant subscriber wrongfully terminated two service contracts between the parties resulting in damages of $138,296.49. Defendant wholesale plumbing supply company admits it terminated the service contracts and claims it was justified because plaintiff materially breached their terms by persistently failing to deliver service in a timely and accurate manner. Plaintiff disputes this.

Jurisdiction is established. The issues were tried to the court for five days starting November 30, 1983. Forty-one exhibits were received, 11 witnesses testified. Briefs have been filed and argument heard.

The principal issue is whether defendant has shown material breach of the contracts justifying termination or rescission.

The two contracts for computer services, one for five years and the other for three, were executed by the parties in October and November 1978. Defendant terminat-

ed them for breach of their terms by letter dated November 24, 1981. This was 24 months and seven months, respectively, prior to the contractual termination dates.

Defendant claims termination was justified because plaintiff persistently failed to provide computer services in a timely and accurate manner as required by contract. Testimony from two of defendant's executives, President Eugene E. Roberts, Jr., and Vice President-Treasurer John E. Loberg, and from two of defendant's data processing supervisors, Sandra Stinar and Jean Trefethen, afforded support to these claims. Roberts and Loberg described the nature of the claimed deficiencies in general terms and Stinar and Trefethen furnished specifics. This evidence showed that the computer system was frequently inoperable, there was often inordinately long response time, material was often late in coming and inaccurate and unreliable when it did come. Shipments from defendant's St. Louis Computer Center were often late and at times misdirected. Particular complaint was made of the mishandling of invoices, accounts receivable, stock status reports, balance sheets and income statements. All four witnesses testified to a lack of cooperation from computer center employees in remedying deficiencies. Witnesses Stinar and Trefethen testified to the entries made in defendant's Exhibits 21A and 21B, daily logs kept by them over a three year period prior to termination, which recorded the inadequacy of services rendered by plaintiff. Stinar testified in detail with reference to log entries for January 1979, and Trefethen testified in detail with reference to entries made for March 1980. Each said that recorded deficiencies of service for those months were representative of deficiencies encountered in the periods covered.

Stinar and Trefethen said that while some of the computer operation foul-ups were attributable to errors of defendant's employees, most of them were the fault of plaintiff. Trefethen, in keeping her log, defendant's Exhibit 21B, made identifying marks next to the recorded foul-ups which, in her view, were the ones fairly attributable to defendant's employees.

Plaintiff periodically requested its service customers to answer survey questionnaires reflecting the calibre of services rendered. Defendant's employees gave generally low ratings to plaintiff's services. Defendant's Exhibit 19, dated March 3, 1981, is illustrative.

Representatives of five wholesale plumbing and industrial supply dealers, each a former user of plaintiff's services, testified for defendant. They were Al Nepomnick, Omaha, Nebraska; Ronald D. Williams, Amarillo, Texas; Margot Richmond, Port Huron, Michigan; Daniel Judge, Lockport, New York; and Milton Miller, Youngstown, Ohio. The related experiences of these witnesses with Distronics data processing services closely paralleled those of defendant. Each of them found Distronics' services inadequate and subsequently terminated its relationship with Distronics because of it. Williams said Distronics service was "terrible," Richmond called it "terribly bad," and Miller called it "unbearable" to the point that his business was in jeopardy.

The poor service was confirmed by plaintiff's president, Marshall D. Campbell, when he wrote on March 26, 1979 to one of its service customers (Def's Ex. 20) "The *Distronics service level has fallen off to a point where it is no longer tolerable.*" (Emphasis supplied.)

But plaintiff's counsel denies defendant's claim of untimely and inadequate service and has sought to show that while there was some inadequacy of delivery for a time after its computer center was moved to St. Louis from its previous headquarters in New Jersey, this was only a temporary deficiency and that its evidence, as graphically portrayed by plaintiff's unnumbered colored chart, shows that its computer system was generally operable more than 95% of the time, its response time was generally between 9 and 15 seconds and its shipments from St. Louis were timely and properly delivered for shipment more than 99% of the time. It should be noted that this evidence applied to all 70 of Distronics cus-

tomers and not specifically to that rendered to defendant.

Distronics has sought to show that many of the claimed inadequacies of services were attributable to defendant's own employees. It has urged that numerous of defendant's complaints are attributable to causes for which plaintiff is not responsible, pointing to specific provisions of the service contract. Plaintiff strongly argues that the real reason defendant terminated the contracts was not because of inadequate service, but because defendant wanted to install the more efficient in-house Compro Data Processing System, started by and owned in part by some of its principal officers.

Distronics President, Marshall D. Campbell, was plaintiff's principal witness. Kathy Thomas, Client Service Manager, also testified. They furnished support for these claims of Distronics.

As noted, the principal issue is whether defendant has shown material breach of the contracts by plaintiff justifying defendant in terminating them.

The basic pertinent law is well established. A material breach of a contract or substantial failure in its performance justifies an aggrieved party in rescinding or terminating it. 17A *C.J.S. Contracts*, § 421(1), § 422(1), § 474; 6A *Corbin on Contracts*, § 1253 at 9 (1962); *Cut Price Supermarkets v. Kingpin Foods, Inc.*, 256 Minn. 339, 98 N.W.2d 257 (1959).

The court is well satisfied that defendant has shown by the greater weight of the evidence that plaintiff breached the contracts by chronic failure to furnish contracted for computer and data processing services promptly and accurately, that this worked to defendant's detriment, that the breach was material and substantial, and that defendant was justified in terminating the contract. Especially credible was the testimony of defendant's operators Stinar and Trefethen who supported the claims of defendant with specificity and the testimony of representatives of five other former users of Distronics who had experiences

very similar to those of defendant. The court was not persuaded that Compro was formed for profit. The primary purpose appeared to be to afford a more efficient service than that afforded by plaintiff.

These expressions are intended to satisfy the requirements of Rule 52(a).